**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

|  |  |
|---|---|
| RELIANT TRANSPORTATION, INC., *et al.* | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DIVISION 1181 AMALGAMATED TRANSIT | ) |
| UNION – NEW YORK EMPLOYEES | ) |
| PENSION FUND, *et al.* | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

REPLY IN SUPPORT
OF DEFENDANTS'
MOTION TO DISMISS
AMENDED COMPLAINT

Case No. 1:18-cv-04561-ILG-SMG

_____

Defendants respectfully submit that nothing in the Response in Opposition (ECF #43) (the "Opposition" or the "Opp.") filed by Plaintiffs should stand in the way of the dismissal of all of their claims.  Accordingly, for the reasons set forth in Defendants' Memorandum in Support of the Motion to Dismiss (ECF #40) (the "Memorandum" or the "Memo"), the Motion to Dismiss should be granted and the Amended Complaint should be dismissed with prejudice.[1]

**I.      Plaintiffs' State Law Claims Are Preempted by ERISA**

This case is based upon Plaintiffs' allegations that the Employer Trustees have failed to administer the Fund, which is an ERISA plan, in accordance with its governing document – the Trust Agreement.  In this regard, Plaintiffs "assert that the Fund and the Trustees have violated the Trust Agreement . . . ."  (Opp. p. 10).  Thus, in order for their state law counts (Claims I and IV) to be claims upon which relief may be granted, Plaintiffs must plausibly allege that a dispute as to whether an ERISA plan is being administered in accordance with its governing document is

---

[1]      "Defendants," "Plaintiffs," "Amended Complaint," and all other capitalized, undefined terms shall have the same meanings as those assigned to them in the Memorandum.

insufficiently "related to" the plan as to be preempted. As established in Defendants' Memorandum (Memo pp. 10-12), Plaintiffs cannot meet this burden.

In arguing against preemption, Plaintiffs rely heavily on a Fourth Circuit decision, *Greenbrier Hotel Corp. v. Unite Here Health*, 719 F. App'x 168 (4th Cir. 2018). That case is entirely inapposite. Plaintiffs attempt to read *Greenbrier* broadly as holding that breach of contract actions are not preempted. However, nothing in that decision supports such a broad interpretation that would extend its holding of non-preemption to a claim that the governing document of an ERISA plan has been breached. To the contrary, in *Greenbrier*, the Fourth Circuit recognized only that "garden-variety contract-based claims" are not preempted. *Id.* at 176.

*Greenbrier* (which is not controlling precedent regardless) clearly does not go so far as to conclude that any action couched as a breach of contract claim is saved from preemption. The Fourth Circuit expressly held that "garden-variety contract-based claims" were not preempted because such claims **did "not implicate the . . . administration of . . . ERISA plans more generally**." *Id.* at 180 (emphasis added). That is similar to the standard previously stated by this Court that "[a] state law is preempted even though it does not refer to ERISA or ERISA plans if it has a clear connection with a plan in the sense that it mandates employee benefit structures *or their administration* or provides alternative enforcement mechanisms." *Cement & Concrete Workers Dist. Council Welfare Fund v. Frascone*, 68 F. Supp. 2d 166, 172 (E.D.N.Y. 1999) (Glasser, J.) (quoting *Plumbing Ind. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 67 (2d Cir. 1997)) (emphasis added) (internal quotation marks and brackets omitted).

Unlike the "garden-variety contract-based claims" in *Greenbrier*, it is obvious that a cause of action based upon whether an ERISA plan is being administered consistent with its Trust Agreement necessarily at least "implicate[s] the . . . administration of" that plan. 719 F. App'x at

2

180.   Although Plaintiffs argue, in the most conclusory fashion, that "the terms of the Trust Agreement does not implicate other relationships regulated by ERISA, does not overlap with ERISA's remedial scheme, or otherwise implicate the regulation of, administration of, or benefits provided under ERISA plans" (Opp. p. 11), they provide no explanation as to how a lawsuit based upon whether the Employer Trustees have administered the Fund consistent with the Trust Agreement does not implicate the administration of the Fund.

Indeed, any suggestion that the Trust Agreement does not implicate the administration of the Fund is patently absurd.  Courts routinely recognize that the purpose of trust agreements is to govern the administration of ERISA plans.  *See, e.g., Ferrara v. Cab II Enters.*, No. 09-CV-1331 (SLT), 2011 U.S. Dist. LEXIS 41588, at *3 (E.D.N.Y. Feb. 24, 2011) ("The plaintiff trustees administer the Funds pursuant to a Restated Agreement and Declaration of Trust . . . that governs the administration of employee benefits and the collection and receipt of employer contributions."); *Lidoshore v. Health Fund 917*, 994 F. Supp. 229, 232 (S.D.N.Y. 1998) ("The Trust Agreement govern[s] the establishment and administration of the Fund . . . ."); *N.Y. State Teamsters Council Health & Hosp. Fund v. Silverline Constr., Inc.*, No. 89-CV-66, 1989 U.S. Dist. LEXIS 14501, at *2 (N.D.N.Y. Nov. 28, 1989) ("Th[e] Trust Agreement governs the operation and administration of the Fund . . . .").

In the section of their Opposition in which they argue against preemption, Plaintiffs feign to be oblivious as to what a dispute over the Trust Agreement has to do with the administration of the Fund.  But this is belied by their other arguments, in which they repeatedly concede in both their Amended Complaint and their Opposition that their dispute involves how the Fund has been administered.  *See* Am. Compl. at ¶ 27 ("[E]mployees and employers must be equally represented in the administration of the Fund"); ¶ 50 ("Plaintiffs are entitled to equitable and injunctive relief to

3

ensure that the Trust is administered in accordance with the terms of the Trust Agreement."); Opp. p. 7 ("Reliant and its employees are denied proper representation when the Board of Trustees exercises its authority to administer the Trust and the Plan . . . ."); p. 14 ("[W]hile Employer Trustees must operate consistent with fiduciary duties, employers and the union must be equally represented on the Board of Trustees to provide that 'check and balance' of the other in the administration of employee benefit funds.").  Indeed, in an argument that is the exact opposite of ERISA preemption jurisprudence, Plaintiffs assert that the Court should hold that their state law claims are not preempted precisely because those claims impact the administration of the Fund, arguing that allowing those state law claims to proceed "would advance the purpose of ensuring the honest administration of financially sound plans."  (Opp. p. 12).

Furthermore, Plaintiffs' argument that "the terms of the Trust Agreement does not implicate other relationships regulated by ERISA" (*id.* p. 11), besides that between employers and the Fund completely ignores the fact that Chaitram is also a Plaintiff with respect to the state law claims.  Indeed, Plaintiffs reiterate that Chaitram is a Plaintiff as they unsuccessfully attempt to avoid dismissal of those state law claims because of a lack of duty owed to Reliant, arguing that "[w]hile Reliant contends it may pursue its breach of trust and breach of fiduciary duties claims, even if it cannot, as a beneficiary, Chaitram can pursue such claims."  (*Id.* p. 15, n.7).  Thus, Plaintiffs concede that, at minimum, their state law claims implicate the relationships between and among the Fund, its Trustees (including the Employer Trustees), its participating employers (including Reliant), and its participants and beneficiaries (including Chaitram).

The other cases Plaintiffs cite are likewise inapposite.  *Geller v. County Line Auto Sales*, 86 F.3d 18 (2d Cir. 1996), involved a common law fraud count, rather than either a claim for breach of contract or breach of fiduciary duty, in which the court acknowledged "that a common law fraud

claim for misconduct arising from the administration of an ERISA plan may be preempted." *Id.* at 22.   The *Geller* Court held that the fraud claim at issue in that case was not preempted only because it does "not rely on the pension plan's operation or management." *Id.* at 23.   By contrast, as noted above, the claims in the Amended Complaint are focused on how the Fund has been operated and managed.

Another case cited by Plaintiffs, *DaPonte v. Manfredi Motors, Inc.*, 335 F. Supp. 2d 352 (E.D.N.Y. 2004), actually supports a finding that Plaintiffs' claims are preempted.   *DaPonte* raised claims for fraudulent or negligent misrepresentation, rather than breach of contract or breach of fiduciary duty.   In finding those claims were not preempted, the court held that "Plaintiffs' state law claim does not arise out of any action taken in the execution, implementation, or administration of the plan, and resolution of the claim would not directly affect the primary administration of benefits function under the plan." *Id.* at 361.   For all of the reasons described above, the administration of the Fund is at issue here.

It is particularly absurd that, in the very same Amended Complaint in which Chaitram brings Claim III for breach of fiduciary duty under ERISA, he is also a Plaintiff to Claim IV which purports to bring a breach of fiduciary duty claim under state law.   Indeed, this attempt to bring simultaneous ERISA and state law claims supports a finding that the state law claims are preempted.   As the Second Circuit has held, "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992).   *See also Bd. of Trs. of the Local 295/Local 851-IBT Emplr. Grp. Pension Fund v. Callan Assocs., Inc.*, No. 98-7889, 1999 U.S. App. LEXIS 4364, at *9 (2d Cir. Mar. 17, 1999) ("With respect to the Funds' state law claims for . . . breach of contract and breach of fiduciary duty, we conclude that these claims are

preempted . . . . The Funds' state law claims are based on the same conduct alleged to be actionable under ERISA and, in fact, were plead in the alternative. . . . Accordingly, the Funds' state law claims are preempted."); *Kowalchyn v. Lewis*, No. 16-cv-7284 (RJS), 2018 U.S. Dist. LEXIS 55067, at *8 (S.D.N.Y. Mar. 28, 2018) ("Plaintiffs' claims for breach of contract and breach of fiduciary duty rely on state law, then, they are plainly preempted, since they involve the same conduct, alleged harms, and requested relief as Plaintiffs' ERISA claims."). For all of these reasons, the Court should dismiss Claims I and IV with prejudice as to both Plaintiffs.

## II.     The Employer Trustees Do Not Owe Any Duty to Reliant

In addition to being preempted by ERISA, Plaintiffs' state law claims are also properly dismissed as to Reliant[2] because they incorrectly presume that the Employer Trustees owe a duty to Reliant. But under the express terms of the Trust Agreement and as a matter of law no such duty exists. (Memo pp. 12-16). Plaintiffs do not and cannot dispute that both Claims I (Breach of Trust) and IV (Breach of Fiduciary Duty) require that the Employer Trustees owe a legal duty to Reliant. (*Id.* pp. 12-13). Plaintiffs instead attempt to argue that the Employer Trustees owe duties to Reliant, going so far as to caption a section of their Opposition: "Defendants Owe Duties To Reliant." (Opp. p. 12).

However, Plaintiffs utterly fail to define what duties are actually owed to Reliant other than the bald and conclusory allegation that "Defendants owe Reliant the duty to perform their obligations under the Trust and to do so in accord with the law and their fiduciary duties." (*Id.* p. 15). A simple review of this section of Plaintiffs' Opposition will find it devoid of any authority identifying duty that is owed to Reliant, as opposed to purported duties owed to the Fund's

---

[2]     Separately, in addition to ERISA preemption, Chaitram fails to state a claim upon which relief may be granted as to the state law claims because of his lack of Article III standing for the reasons set forth in the Memorandum (Memo pp. 19-26) and in Section IV, *infra*.

participants and beneficiaries.  For example, Plaintiffs argue that the purported violations of the Trust Agreement violate the Labor Management Relations Act ("LMRA").  (*Id.* p. 14).  However, Plaintiffs completely fail to provide any authority supporting that, even if these allegations stated a violation of the LMRA (they do not), that would breach some duty owed *to Reliant*.

As explained in the Memorandum, under both the Trust Agreement and ERISA, the Employer Trustees owe no duty to Reliant (or any of the Fund's other contributing employers). Article II, Section 2 of the Trust Agreement states that "[t]he purpose of this Trust shall be to provide pension and related benefits to Participants and Beneficiaries [] pursuant to the Agreement and Plan and in accordance with applicable law."  (ECF #41-1, p. 5).  Nothing in the Trust Agreement states that it exists for the benefit of the contributing employers generally or Reliant specifically.  Plaintiffs provide no explanation whatsoever how Reliant can bring a cause of action for breach of contract when the very contract that is alleged to have been breached (the Trust Agreement) expressly states that duties are only owed to the Fund's participants and beneficiaries.

Turning to the impact of ERISA on the question of whether the Employer Trustees owe a duty to Reliant, Plaintiffs attempt to skirt the issue by focusing exclusively on whether Reliant intends to benefit itself, while avoiding the critical question of whether, regardless of Reliant's intent, any duty can be owed to Reliant.  Plaintiffs thereby miscomprehend the Fund's arguments that ERISA prohibits the Employer Trustees, as a matter of law, from owing any duty to Reliant. ERISA § 404(a)(1)(A) requires ERISA fiduciaries – such as the Employer Trustees – to act "**solely** in the interest of the [plan's] participants and beneficiaries and . . . for the **exclusive** purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A) (emphasis added).  ERISA thus expressly prohibits the Employer Trustees from fulfilling their role as fiduciaries by attempting to fulfill

7

some duty to the Fund's contributing employers, including Reliant, and yet the existence of such a duty is a necessary prerequisite to Plaintiffs' state law claims.

Plaintiffs attempt to avoid the issue by arguing that Reliant does not want the Employer Trustees to act in Reliant's interests, insisting that "[n]owhere in the Amended Complaint do Plaintiffs ask for the Employer Trustees to act in Reliant's interests or interests of other contributing employers" and that "Reliant is acting in the best interests of participants and beneficiaries generally, and seeking to protect the security of the retirement benefits of its own employees." (Opp. p. 13). This contention cannot be harmonized with the allegations in the Amended Complaint in which Plaintiffs repeatedly acknowledge that they seek to have a Reliant representative as a Trustee to protect Reliant's interests. *See* Am. Compl. at ¶ 17 ("Reliant's lack of a voice within the Board of Trustees places [Reliant] in precarious situations, particularly due to the fact that Reliant is the Fund's largest contributor."); ¶ 18 (an "example" of Reliant's "precarious situations" is that "Reliant faces a growing risk of" withdrawal liability); ¶ 19 ("Reliant effectively is unable to protect . . . itself" from the consequences of withdrawal liability). Along this same vein, and as clear evidence of Reliant's intentions, in its Original Complaint, Reliant alleged that "Reliant's interests . . . have not been protected properly by the Trustees." (Orig. Compl., ECF #1, ¶ 51).[3]

Regardless, even if Reliant's newly-discovered altruism was credited, it does not change the fact that, as a matter of law and as Reliant itself concedes, for either and both of its state law claims to be cognizable, the Employer Trustees must owe a duty to Reliant. Reliant has no answer for the fact that, under both the Trust Agreement and as a matter of law under ERISA, the

---

[3]     As noted in the Memorandum (Memo p. 5, n.4), and unchallenged in the Opposition, "[t]he Court may take judicial notice of a prior complaint as matters of public record." *Javed v. Medgar Evers Coll. of the City Univ. of N.Y.*, No. 15-cv-7424(FB)(ST), 2017 U.S. Dist. LEXIS 161095, at *8 n.8 (E.D.N.Y. Sep. 29, 2017) (internal brackets and quotation marks omitted).

Employer Trustees cannot and do not owe any duty to Reliant.  Thus, Claims I and IV should be dismissed as to Reliant.

**III.**   **Plaintiffs Concede That Claim II Fails to State a Claim**

With respect to the first of Plaintiffs' two ERISA-based claims, as established in the Memorandum (Memo pp. 16-18), Claim II fails because Plaintiffs purport to bring it "[u]nder ERISA Section 4301 . . . ."  (Am. Compl. ¶ 52).  ERISA § 4301(a) only provides standing to bring a cause of action for a substantive violation of MPPAA – rather than ERISA at large – because it only grants standing to a party "who is adversely affected by the act or omission of any party *under this subtitle*," 29 U.S.C. § 1451(a), with the reference to "this subtitle" meaning MPPAA.

The Supreme Court has held that ERISA § 4301(a) "answers only a 'standing' question -- who may sue for a violation of the obligations established by [MPPAA]'s substantive provisions," in that it "extends judicial remedies for violation of the MPPAA to a broad range of plaintiffs . . . [b]ut that provision does not make an 'adverse effect'" unlawful *per se* . . . ."  *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 203 (1997).  Thus, to sustain a cause of action under ERISA § 4301(a), a plaintiff must allege a substantive violation of MPPAA.  *See DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 510 (6th Cir. 2014) ("§ 1451(a)(1) confers no substantive rights but simply identifies who can pursue a civil action to enforce the sections governing multiemployer plans."); *Div. 1181 Amalgamated Transit Union - N.Y. Emples. Pension Fund v. B & M Escorts, Inc.*, No. 16-cv-2498 (SFJ)(SIL), 2018 U.S. Dist. LEXIS 119208, at *23-24 (E.D.N.Y. May 29, 2018) ("[T]o the extent the Third-Party Plaintiffs rely on § 1451(a)(1) as a basis upon which to find the DOE liable to them . . . , that reliance is unavailing," because while it may provide them with standing, "[t]hat section does not provide the Third-Party Plaintiffs with a cause of action.").

Plaintiffs make no effort to argue that they have a plausible action under MPPAA, instead conceding that there is a "lack of cause of action for employers, other than under the withdrawal scheme itself . . . ." (Opp. p. 22).   Conceding, as they must, that the statute pursuant to which they have filed Claim II – ERISA § 4301(a) – will not sustain it, Plaintiffs instead ask the Court to create a remedy out of whole cloth, arguing that "the Court should recognize a common law cause of action." (*Id.*).   Specifically, Plaintiffs ask the Court to "allow[] an employer to pursue an action for appropriate legal or equitable relief, or both against trustees of a multiemployer plan for their breach of the trust agreement, their violations of ERISA, and their breach of fiduciary duties . . . ." (*Id.* p. 23) (internal quotation marks omitted).   This must be rejected for a number of reasons.

First, and most obviously, Plaintiffs have not pled any such common law cause of action. The Amended Complaint states only two ERISA claims (Claims II and III).   Claim II is brought "[u]nder ERISA Section 4301 . . . ." (Am. Compl. ¶ 52).   Claim III is brought only "By Plaintiff Chaitram." (*Id.* p. 9).   *See also id.* at ¶ 64 ("Plaintiff Chaitram is entitled to equitable relief under ERISA § 502(a)(3) . . . .").   Despite the fact that Defendants made the same arguments in moving to dismiss the ERISA § 4301(a) claim in the Original Complaint (ECF #30, pp. 14-17), Plaintiffs elected not to bring this "common law" claim, which they contend the Court should now create, when they filed their Amended Complaint.   Having failed to allege such a common law claim in their Amended Complaint, but instead electing to merely restate their ERISA § 4301(a) claim virtually word-for-word (*compare* Orig. Compl. ¶¶ 43-47 *with* Am. Compl. ¶¶ 51-55), Plaintiffs cannot save their Amended Complaint from dismissal based upon a cause of action they chose not to plead.   *See, e.g., Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that "a party is not

entitled to amend its complaint through statements made in motion papers" where certain allegations did "not appear anywhere in the amended complaint and did not enter the case until [plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss."); *Gomez v. City of N.Y.*, No. 09 Civ. 620, 2012 U.S. Dist. LEXIS 60339, at *12 (E.D.N.Y. Apr. 30, 2012) (Glasser, J.) ("It is well-settled that a party is not entitled to amend its complaint through statements made in motion papers or interrogatories."); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 276 n.2 (E.D.N.Y. 2009) ("Plaintiff, in her opposition brief, for the first time, introduced a claim for misrepresentation. . . . The Second Circuit has held that '[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint.' . . . [Plaintiff] fails to allege misrepresentation either in her complaint or her amended complaint. Accordingly, this opinion does not consider this claim.") (quoting *Shah*, 252 F. App'x at 366).

Even if Plaintiffs had sought leave to bring such a claim, which they have not done, no such claim could be permitted.  As noted above, despite being on notice of Defendants' arguments against their ERISA § 4301(a) claim (ECF #30, pp. 14-17), when Plaintiffs filed their Amended Complaint, they chose to restate that claim rather than assert any "common law" ERISA claim. This alone is sufficient to preclude any further amendment.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) ("[W]e have also upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim . . . ."); *Gomez*, 2012 U.S. Dist. LEXIS 60339, at *11-12 (granting summary judgment to defendant where Plaintiff attempted to amend the complaint in an opposition brief and "was [previously] given an opportunity to amend the Complaint, yet did not correct this deficiency.").

More importantly, any such claim would obviously be futile.  Plaintiffs attempt to analogize this to cases in which employers have been permitted to bring lawsuits against a plan.

However, those cases arose under very limited circumstances not present here, and are not cases in which an employer is seeking to broadly enforce ERISA's fiduciary standards. For example, *Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers,* 814 F.2d 79 (2d Cir. 1987), dealt with whether an employer's efforts to recover contributions made to a fund alleged to have been made mistakenly, as potentially permitted by ERISA § 403(c)(2). There was no analysis regarding whether employers generally have standing to file lawsuits against ERISA plans, and certainly no analysis into broad-based enforcement of ERISA's fiduciary standards.

By contrast there *was* such a discussion in another case on which Plaintiffs rely, *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Employers Pension Fund*, 847 F.2d 113 (3d Cir. 1988), but the analysis in that case cuts heavily against Plaintiffs. In that case, the employer alleged that it had been defrauded by the fund, which led to its withdrawal liability assessment. Based upon those allegations, the Third Circuit found that the standards of ERISA § 4301(a)(1) were satisfied, because "[t]he Fund's assessment of withdrawal liability, as well as its purported misrepresentations and concealments of the Fund's financial condition, plainly were 'act[s] or omission[s] . . . under this subtitle with respect to a multiemployer plan.'" *Id.* at 120 (quoting ERISA § 4301(a)). However, unlike *Carl Colteryahn Dairy*, in their Opposition, Plaintiffs expressly concede that they do not have a MPPAA or withdrawal liability-related claim, as they protest "[t]he lack of cause of action for employers, other than under the withdrawal scheme itself . . . ." The lack of a MPPAA-based claim leads Plaintiffs to ask the Court to create a common law claim for employers to enforce ERISA's fiduciary standards generally.

This is where *Carl Colteryahn Dairy* becomes harmful to Plaintiffs' arguments. In that case, the Third Circuit rejected the argument that a lawsuit to enforce ERISA's fiduciary standards could be brought by an employer, holding that "[f]iduciary duties under ERISA, as a general rule,

12

are owed to participants and beneficiaries only." *Id.* at 119.  The Third Circuit went on to note that "[t]here is no claim that the Fund acted in breach of a statutory fiduciary duty to act in the best interests of [the employer], nor could there be one, because the Fund had no such duty." *Id.*  Thus, *Carl Colteryahn Dairy* only stands for the unremarkable proposition that if an employer plausibly alleges a substantive violation of MPPAA – which Plaintiffs concede they cannot – then the employer may bring such a claim under ERISA § 4301(a).  However, without such a violation of MPPAA, *Carl Colteryahn Dairy* rejects that an employer may bring a lawsuit to enforce ERISA's fiduciary standards generally.

Any effort to further amend the Complaint to bring the "common law" claim contemplated by Plaintiffs is necessarily futile because Congress expressly excluded employers from having standing for such claims.  Civil actions to enforce ERISA's fiduciary standards are brought pursuant to ERISA § 502, 29 U.S.C. § 1132.  Specifically, ERISA § 502(a)(2) authorizes lawsuits "for appropriate relief under" ERISA § 409, 29 U.S.C. § 1109, the latter of which holds ERISA fiduciaries liable for any damages caused to the plan as a result of a breach of their duties.  Additionally, ERISA § 502(a)(3) – the section under which Chaitram brought Claim III – authorizes lawsuits "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3).

However, employers plainly lack standing to bring a claim under Section 502 – the only section under which ERISA's fiduciary standards may be enforced.  ERISA § 502(a)(2) only provides standing to "the Secretary [of Labor], or [] a participant, beneficiary or fiduciary . . . ."  ERISA § 502(a)(3) only provides standing to "a participant, beneficiary, or fiduciary . . . ."

Employers generally, and Reliant specifically, do not fall under any of these categories, and case law clearly establishes that employers, such as Reliant, lack standing to enforce ERISA's fiduciary standards.[4]  *See Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Emps.*, 717 F.2d 726, 730 (2d Cir. 1983) ("[W]e hold that Tuvia, as an employer, did not have standing to bring an action under section 1132 of ERISA."); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983) ("[A]n employer, also not named in ERISA's jurisdictional provisions, may not bring suit under the Act.").  The lack of employer standing under Section 502 was certainly not an oversight as the Supreme Court has recognized that ERISA is a "comprehensive and reticulated statute . . . ."  *Nachman Corp. v. PBGC*, 446 U.S. 359, 361 (1980).

In sum, Claim II fails to state a claim upon which relief may be granted because it is pled as arising under ERISA § 4301(a), which necessarily requires that a substantive violation of MPPAA be plausibly alleged, and Plaintiffs concede that they cannot do so.  To the extent Plaintiffs contend that this Court should create a common law action permitting employers to generally enforce ERISA's fiduciary standards:  (a) they have not pled that claim; (b) they had an opportunity to do so in their Amended Complaint and elected not to; and (c) such a claim is futile as case law

---

[4]       In a footnote, Plaintiffs assert that "Defendants have abandoned their argument that Reliant lacks standing under Section 502."  (Opp. p. 21, n.13).  This is a preposterous argument. In their Original Complaint, Reliant did not bring any claim under ERISA § 502, but instead only brought an ERISA § 4301(a) claim.  (Orig. Compl. ¶¶ 43-47).  In moving to dismiss that Original Complaint, Plaintiffs noted that not only did Reliant fail to state a claim under ERISA § 4301, but that, to the extent Reliant instead contended that its claim arose under ERISA § 502 (which it did not plead), Reliant lacked standing for a Section 502 claim.  (ECF #30, pp. 14-15).  In their Amended Complaint, Plaintiffs finally added an ERISA § 502 claim, that being Claim III, but made it clear that claim was being brought "By Plaintiff Chaitram," not Reliant.  (Am. Compl. p. 9).  Thus, it was apparent from the Amended Complaint that Reliant did not assert an ERISA § 502 claim and, therefore, there was no reason for Defendants to argue in the Memorandum that Reliant lacks Section 502 standing.  Plaintiffs' Opposition is the first time Reliant has ever suggested it has an ERISA § 502 claim, albeit one that it has not pled.  As described above, this attempt to amend the Complaint through the Opposition is improper.

decisively establishes that employers lack standing to broadly enforce ERISA's fiduciary standards.  Accordingly, Claim II should be dismissed with prejudice.

## IV.   Chaitram Has Failed to Allege Any Injury-In-Fact

Finally, as established in the Memorandum (Memo pp. 19-26), all of Chaitram's claims – including Claim III, for which he is the only Plaintiff – must be dismissed because he has failed to plausibly allege that he suffered any injury-in-fact sufficient to establish Article III standing. Chaitram's lack of Article III standing is established by *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009), in which the Second Circuit held that while "[t]here is no doubt that ERISA imposes on plan fiduciaries a duty to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA],'" and while "[t]he statute does impose a general fiduciary duty to comply with ERISA, . . . *it does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty*." *Id.* at 120 (quoting ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)) (emphasis added). Instead, the Court held that a plaintiff "must allege some injury or deprivation of a specific right that arose from a violation of that duty in order to meet the injury-in-fact requirement." *Id.* at 121.

Plaintiffs make a number of arguments to distinguish *Kendall*, all of which fail.  First, they argue that *Kendall* was "abrogated by" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (hereafter, "*Anthem*").  (Opp. p. 18).  However, Plaintiffs neither quote nor otherwise cite to any particular holding in *Anthem* that "abrogates" *Kendall*, and that is because there was no abrogation.   To the contrary, in *Anthem*, the Second Circuit expressly cited *Kendall* for the proposition that "in order to have standing under ERISA, a plaintiff must both 'assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty' and

'identify a statutory endorsement of the action.'" *Anthem*, 821 F.3d at 359 (quoting *Kendall*, 561 F.3d at 118).  In other words, to have a cognizable ERISA claim, a plaintiff must have both constitutional and statutory standing.  Chaitram may have statutory standing as a participant, but he lacks constitutional standing because he has not alleged an injury-in-fact.[5]

Next, Plaintiffs argue that the injury-in-fact requirement for Article III standing only applies in cases seeking "monetary relief," and since Chaitram is seeking injunctive relief, no injury must be shown.  (Opp. p. 18).  However, *Kendall* expressly rejects this argument.  In *Kendall*, the Second Circuit looked to *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450 (3d Cir. 2003), in which "the Third Circuit held that a plan participant 'need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that the plan administrator satisfy its . . . fiduciary responsibilities' because under the relevant provisions of ERISA the plan participant had a right to . . . 'to have the plan administrator act in a fiduciary capacity.'" *Kendall*, 561 F.3d at 120 (quoting *Horvath*, 333 F.3d at 456) (internal brackets omitted).  The Second Circuit then interpreted *Horvath* as holding that "[w]hile the participants did not have to show they were specifically injured, pecuniarily or otherwise, they did  have to show that they were generally harmed by the deprivation of a specific right . . . ." *Id.* at 120-21.

This is where Plaintiffs' arguments go off the rails.  Plaintiffs cite a few district court cases as purportedly standing for the proposition "that a plaintiff seeking injunctive relief under ERISA need not demonstrate any actual harm."  (Opp. p. 19) (internal quotation marks omitted).  But these cases do not challenge, nor could they, the Second Circuit's holding in *Kendall* that "*[e]ven in*

---

[5]       This is in contrast to Reliant, which also lacks statutory standing to assert a claim under ERISA § 502(a)(3), which can only be brought by fiduciaries, participants, and beneficiaries. This is undoubtedly why Plaintiffs elected to make Chaitram the only Plaintiff to Claim III, and further explains why Reliant's proposed "common law" action to allow employers to enforce ERISA's fiduciary standards is futile.

***cases where plaintiffs need not show an individualized harm, they must still allege some injury in the form of a deprivation of a right as a result of a breach of fiduciary duty conferred by ERISA.***" 561 F.3d at 120 (emphasis added).  Thus, the law in the Second Circuit is that, in order to have Article III standing in an ERISA claim seeking monetary damages, a participant must allege individualized harm (*i.e.*, that the participant has actually suffered a pecuniary loss); but in cases, like this, that seek only injunctive relief, while there may be no obligation to allege individualized harm, a participant must "still allege some injury in the form of a deprivation of a right as a result of a breach of fiduciary duty conferred by ERISA." *Id.*

All Plaintiffs can muster by way of an alleged injury is that "Chaitram is being deprived of the right to be adequately represented by an equally balanced Board of Trustees, as required by the LMRA and the Trust Agreement" and that "he is being harmed by the lack of a proper check and balance within the Board of Trustees when making decisions about the Fund." (Opp. p. 6).  But other than the allegations that the Trust Agreement has not been properly followed, Plaintiffs fail to allege any way in which this alleged failure deprived Chaitram of any of his rights as an ERISA participant.  *Kendall* expressly holds that allegations of a failure to follow a plan's governing documents, without any plausible allegations as to how that alleged failure deprived a plaintiff of his or her rights as a participant, are insufficient to create Article III standing:

> [Plaintiff] only alleges that [Defendant] deprived her of her right to a plan that complies with ERISA, deprivations she contends occurred as a result of [Defendant's] breach of its fiduciary duty to comply with ERISA.  This argument is obviously circular. ***While plan fiduciaries have a statutory duty to comply with ERISA under § 1104(a)(1)(D), [Plaintiff] must allege some injury or deprivation of a specific right that arose from a violation of that duty in order to meet the injury-in-fact requirement. . . . [Plaintiff] cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitute an injury-in-fact sufficient for constitutional standing.***

561 F.3d at 112 (emphasis added).

Consider, for example, if the Trust Agreement stated that Board of Trustees meetings were to take place on Wednesdays and Chaitram filed a lawsuit alleging that the Trustees were failing to comply with the Trust Agreement because they were meeting on Tuesdays.  In this hypothetical, Chaitram does not allege that any of his rights as an ERISA participant have been deprived other than his purported right to have the Trustees comply with the Trust Agreement and meet on Wednesdays.  As absurd as such a lawsuit may seem, that is the case Chaitram has brought to this Court.  Chaitram complains that the Trust Agreement has not been followed, but he does not plausibly allege how this has injured participants generally or him specifically.  Chaitram's arguments that the supposed injury is the failure to follow the Trust Agreement is the "obviously circular" reasoning the Second Circuit rejected in *Kendall*.

Beyond these circular arguments, Plaintiffs merely warm over their allegations from the Amended Complaint that the purported violations of the Trust Agreement "have created the risk of Reliant withdrawing from the Fund, which would threaten the contribution base and stability of the Fund. . . . This, in turn, directly affects Reliant's employees (including Chaitram) who depend on the Fund for retirement."  (Opp. p. 20).  However, Plaintiffs have no response for Defendants' authority establishing that the payment of withdrawal liability is for the benefit of participants, such as Chaitram, rather than their detriment.  (Memo pp. 22-24).

Furthermore, Plaintiffs fail to respond to the case law cited in the Memorandum that the theoretical risk that Reliant may have to pay withdrawal liability is far too hypothetical to constitute an injury-in-fact for Article III purposes.  Indeed, rather than countering that argument, Plaintiffs expand on it, asserting that the "Board's actions have created the risk of Reliant withdrawing from the Fund, which would threaten the contribution base and stability of the Fund, particularly in light of the fact that Reliant is the largest contributing participating employer in the

Fund." (Opp. p. 6). Thus, Plaintiffs' theory that Chaitram suffered an injury-in-fact is concocted by building hypothetical upon hypothetical. First, Plaintiffs hypothesize that there is a "risk of Reliant withdrawing from the Fund" (*id.*), but do not allege that Reliant actually intends to withdraw. They further hypothesize that *if* Reliant withdrew, this could "threaten the contribution base and stability of the Fund." (*Id.*). These are multiple hypotheticals stacked on top of one another – it is hypothetical that Reliant would withdraw, and it is hypothetical that Reliant's hypothetical withdrawal would somehow injure the Fund. This obviously fails to satisfy Article III, which requires that "that the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Nat'l Council of La Raza v. Gonzales*, 468 F. Supp. 2d 429, 435-36 (E.D.N.Y. 2007) (Glasser, J.) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

Finally, Plaintiffs argue in this section of their Opposition, for the first time, that "the Trust Agreement's failure to impose time limits on the tenures of Trustees coupled with its restriction of allowing removal of Employer Trustees only by other Employer Trustees overly insulates the Trustees from effective oversight by beneficiaries of the Fund." (Opp. p. 20-21). As a result, they allege that "[t]his deprives Chaitram of the oversight needed to insure compliance with the fiduciary obligations imposed by ERISA." (*Id.* p. 21) (internal quotation marks omitted). Plaintiffs have brought no claims, for example, seeking relief for an allegation that the Trust Agreement does not impose time limits on Trustee tenure. Any such claim by Plaintiffs would amount to them seeking to have the Court *rewrite* the Trust Agreement despite having claimed to have brought this action to *enforce* the Trust Agreement as written. Thus, this appears to be another example of Plaintiffs – who already amended their Complaint – improperly suggesting

19

they have other potential claims that they have not pled in a desperate effort to stave off dismissal. Any such attempt is obviously improper and should be disregarded as such.

## V.     <u>Conclusion</u>

For these reasons, as explained more fully in the Memorandum, all four of Plaintiffs causes of actions should be dismissed as follows:

- Claims I (Breach of Trust) and IV (Breach of Fiduciary Duty) should be dismissed: (a) as to both Plaintiffs because these claims are preempted by ERISA; (b) as to Reliant because Defendants owe no duty to Reliant; and (c) as to Chaitram because he has not plausibly alleged an injury-in-fact.

- Claim II (Violation of ERISA) should be dismissed:   (a) as to both Plaintiffs because they have not plausibly alleged any substantive violation of MPPAA; and (b) as to Chaitram because he has not plausibly alleged an injury-in-fact.

- Claim III (Violation of ERISA) should be dismissed as to Chaitram, who is the only Plaintiff to this claim, because he has not plausibly alleged an injury-in-fact.

Accordingly, the Amended Complaint should be dismissed with prejudice.

Dated: December 21, 2018

Respectfully submitted,

*/s/ Richard S. Siegel*
Barry S. Slevin
Jeffrey S. Swyers (*pro hac vice*)
Richard S. Siegel (*pro hac vice*)
SLEVIN & HART, P.C.
1625 Massachusetts Avenue NW, Suite 450
Washington, DC  20036
(202) 797-8700 (tel)
(202) 234-8231 (fax)
bslevin@slevinhart.com
jswyers@slevinhart.com
rsiegel@slevinhart.com

*Counsel for Defendants*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2018, the within and foregoing Reply in Support of Defendants' Motion to Dismiss Amended Complaint was served via ECF which will provide notice of filing to all counsel of record.

/s/ *Richard S. Siegel*
Richard S. Siegel

20690198v2