```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RELIANT TRANSPORTATION, INC., and
SONNY CHAITRAM,

                Plaintiffs,                                    MEMORANDUM AND ORDER
                                                               18-CV-04561
        - against -

DIVISION 1181 AMALGAMATED
TRANSIT UNION – NEW YORK
EMPLOYEES PENSION FUND,

NEIL STRAHL, individually and as trustee
of the Division 1181 Amalgamated Transit
Union – New York Employees Pension Fund,

NEIL MANCUSO, individually and as
trustee of the Division 1181 Amalgamated
Transit Union – New York Employees Pension
Fund,

COREY MUIRHEAD, individually and as
trustee of the Division 1181 Amalgamated
Transit Union – New York Employees Pension
Fund, and

STANLEY BRETTSCHNEIDER, individually
and as trustee of the Division 1181
Amalgamated Transit Union – New York
Employees Pension Fund,

                Defendants.
------------------------------------------------------------x
```

GLASSER, Senior United States District Judge:

       Plaintiffs Reliant Transportation, Inc. ("Reliant") and Sonny Chaitram brought this action against Defendants Division 1181 A.T.U. – New York Employees Pension Fund ("Pension Fund") and four of its trustees.

       This case arises from Defendants' alleged breach of the Pension Fund's governing trust agreement (ECF No. 41-1, "Trust Agreement"), which creates a board of trustees to be comprised

equally of employer and union representatives. Defendants allegedly failed to fill an employer trustee vacancy, misrepresented to Reliant the existence of that vacancy, failed to remove employer trustees who do not properly represent employers, and refused to appoint Reliant's preferred representative to the board of trustees. (Am. Compl. ¶ 62).

Plaintiffs bring: (1) a claim for breach of trust under New York law ("Claim I"); (2) a cause of action under § 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA") ("Claim II"); (3) a cause of action under ERISA § 502(a)(3) ("Claim III"); and (4) a claim for breach of fiduciary duty under New York law ("Claim IV"). Claims I, II and IV are brought by both Plaintiffs. Claim III is brought only by Chaitram. (Am. Compl. ¶¶ 42-70).

Pending before the Court is Defendants' motion to dismiss pursuant to Rule (12)(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 39). The Court will also review Defendant's motion under Rule 12(b)(1), because it raises the question of whether Chaitram has constitutional standing.[1] For the reasons discussed below, the motion is **GRANTED** with respect to Claims I, II and IV, and **DENIED** with respect to Claim III.

## BACKGROUND

Reliant is a for-profit student transportation company operating in New York City. Chaitram is an employee of Reliant and a vested participant in the Pension Fund. Reliant makes monthly contributions to the Pension Fund, as required by a collective bargaining agreement with its employees' union ("Union"). The Pension Fund operates pursuant to the Trust Agreement. (Am. Compl. ¶¶ 3, 5, 14-15, 20).

---

[1] Defendants do not formally invoke Rule 12(b)(1). But they argue, *inter alia*, that Chaitram does not have constitutional standing to bring this case. Constitutional standing must be reviewed under Rule 12(b)(1), not 12(b)(6). *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

The Trust Agreement creates a board of trustees ("Board"), comprised of four who "represent employers" ("Employer Trustees") and four who "represent the Union" ("Union Trustees").[2] (Tr. Agmt. Art. III § 1). The power to remove, appoint or replace an Employer Trustee rests solely with the remaining Employer Trustees, and not with employers.[3] (*Id*. Art. III §§ 5(a), 7(b)). Any Employer Trustee vacancy must be filled within ninety days. (*Id*. Art. III § 8).

Plaintiffs allege that Defendants violated the Trust Agreement's equal representation requirement by maintaining employer trustees on the Board who do not properly represent employers, and by refusing to appoint Reliant's requested representative to the Board. (Am. Compl. ¶¶ 46, 54, 62, 67). Defendants argue that, by the express terms of the Trust Agreement, the power to remove, appoint or replace an Employer Trustee rests solely with the remaining Employer Trustees. (ECF No. 40, "Defs.' Mem. L." at 16 n.6). The parties disagree on what it means for an Employer Trustee to properly "represent" an employer: whether any person who is duly appointed meets this requirement, or if something more is needed.[4]

---

[2] This equal representation requirement mirrors § 302(c)(5)(B) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5)(B), which forbids an employer from contributing to a pension fund unless "employees and employers are equally represented in the administration of such fund." Accordingly, the Trust Agreement makes clear that the Pension Fund must "*at all times* be administered by an equal number of Employer and Union Trustees." (Tr. Agmt. Art. III § 12 (emphasis added)).

[3] In contrast, the Trust Agreement grants the Union the sole power to appoint, remove and replace Union Trustees. (Tr. Agrmt. Art. III §§ 5(b), 7(a)).

[4] Plaintiffs are not entirely clear on what qualifications or characteristics they believe an Employer Trustee must possess. In their Amended Complaint, Plaintiffs imply that a "proper representative" is one who has some official affiliation with an employer who contributes to the Pension Fund. (*Id*. ¶ 38 (arguing that Defendant trustee Neil Manusco is not an employer representative because he is "the president of a company that is not a contributing employer")). Similarly, in their memorandum of law, they say Employer Trustees must "be from participating employers." (Pls.' Opp'n at 17). In the preceding paragraph, however, they imply that this may not necessarily be enough, and "that an 'Employer Trustee' [must] be *appointed* by an 'Employer' as defined by the Trust Agreement." (*Id.* (emphasis added)). Plaintiffs elsewhere hint that a "true employer trustee"

3

Plaintiffs also allege that Defendants failed to fill an employer trustee vacancy which remains outstanding,[5] and provided "false or misleading" information to Reliant regarding the status of that vacancy. (Am. Compl. ¶¶ 41, 61). Defendants do not respond to these allegations.

Defendants move to dismiss all four claims on various grounds discussed below.

## LEGAL STANDARD

A district court properly dismisses an action under Rule 12(b)(1) for lack of subject matter jurisdiction "if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications*, S.a.r.l., 790 F.3d 411, 416–17 (2d Cir. 2015). To avoid dismissal, the plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable

---

is one who has a "direct and ongoing relationship with both the Union and their employees who are beneficiaries of the fund," because "an employer with a collective bargaining relationship with the Union has the ability to exercise leverage and influence on behalf of its employees in a way that a trustee disconnected from the employees and the Union simply cannot." (*Id.* at 17 n.9 (internal quotation marks omitted)).

[5] The Amended Complaint alleges Defendant Stanley Brettschneider is merely an "*Alternate* Employer Trustee of the Fund," and so the seat he occupies on the Board is still vacant. (Am. Compl. ¶ 9 (emphasis added)).

4

inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). But the Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns*, 493 F.3d at 98.

## DISCUSSION

### I. Chaitram Has Article III Standing

Defendants move to dismiss all four claims, to the extent brought by Chaitram, on the ground that he lacks constitutional standing. When a defendant moves to dismiss a claim under both Rule 12(b)(1) and 12(b)(6), courts should first consider the 12(b)(1) challenge to jurisdiction, the lack of which renders the remaining arguments moot. *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993). For the reasons stated below, Chaitram has standing to bring this case.

Article III of the United States Constitution limits the federal courts' jurisdiction to "Cases" and "Controversies." To ensure the presence of a case or controversy, the plaintiff must (1) demonstrate "injury-in-fact"—the invasion of a legally protected interest" which is "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical," (2) establish a "causal connection between the injury and conduct complained of," which must be "fairly traceable to the defendant's actions and not the result of independent action by a third party," and (3) show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Defendants argue Chaitram has not alleged an injury-in-fact. (Defs.' Mem. L. at

5

2-3, 19-24). They do not challenge standing with respect to traceability or redressability. (*Id*. at 19).

According to the Amended Complaint, the Board's lack of equal representation could result in a series of employer-adverse decisions, creating a "growing risk" that Reliant will withdraw from the Pension Fund. Due to the Board's recent adoption of a policy imposing "withdrawal liability" on employers who leave the Pension Fund,[6] Reliant would incur a $100 million penalty which it may not be able to pay. This would in turn threaten the contribution base and financial health of the Pension Fund, on which Chaitram relies for his benefits. (Am. Compl. ¶ 18).

Defendants contend that "the theoretical risk that Reliant may have to pay withdrawal liability is far too hypothetical to constitute injury-in-fact [to Chaitram]."[7] (ECF No. 44, "Defs.' Reply" at 18-19). However, the Second Circuit has long recognized that "[t]hreatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes." *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003). *See also LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (finding that an increased risk of exposure to certain pollutants constituted injury-in-fact). The plaintiff bears the burden of alleging a "credible threat" of harm in the form of enhanced risk. The court must then qualitatively evaluate whether the degree of risk supports standing. *Baur*, 352 F.3d at 637. In *Baur*, the plaintiff alleged an increased risk of

---

[6] This policy, which was set by the Board while allegedly lacking equal representation, is offered by Reliant as an example of the kind of employer-adverse decisions it is concerned about. (*See* Am. Compl. ¶ 18).

[7] Relatedly, Defendants argue withdrawal liability could not possibly form the basis of Chaitram's injury because "[t]he very purpose of withdrawal liability is to help employee participants, not to harm them." (Defs.' Mem. L. at 22-23). This argument is unpersuasive. As alleged in the Amended Complaint, Reliant may be judgement-proof for the purported $100 million liability. (Am. Compl. ¶ 14-15).

contracting "Mad Cow Disease" from the consumption of downed livestock. *Baur*, 352 F.3d at 633-634. The Second Circuit held this constituted injury-in-fact because Mad Cow Disease, while rare, is a "deadly disease with no known cure or treatment. Thus, even a moderate increase in the risk of disease may be sufficient to confer standing." *Baur*, 352 F.3d at 634.

Other Circuits agree.[8] In the pension funds context, the Seventh Circuit held in *Johnson v. Allsteel, Inc.* that a plaintiff employee properly alleged injury-in-fact where a unilateral amendment to the plan gave the plan's administrator discretion to construe and determine eligibility under that plan. 259 F.3d 885 (7th Cir. 2001). The court reasoned that "[t]he chance that the administrator will exercise its discretion adversely against the insured immediately decreases the insured's rights under the plan. This is true whether or not the administrator ever exercises its discretion adversely against the insured" because "the increased risk is itself an injury." *Id*. at 888.

Plaintiffs' allegations, construed as true under the 12(b)(1) standard of review, are not too hypothetical to supply a basis for Article III standing. Reliant is the largest employer contributing to the plan, and so its withdrawal and failure to pay a $100 million liability could destabilize the Pension Fund. In fact, "its withdrawal could . . . [cause] a mass withdrawal event to occur and/or result in mass underfunding." (ECF No. 43, "Pls.' Opp'n" at 6 n.2). All this would have

---

[8] *See, e.g.*, *Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc) ("[T]hreats or increased risk constitute[] cognizable harm"); *Central Delta Water Agency v. United States*, 306 F.3d 938, 947-48 (9th Cir. 2002) ("The possibility of future injury may be sufficient to confer standing on plaintiffs."); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998), *cert. denied*, 526 U.S. 1146 (1999) ("A probabilistic harm, if nontrivial, can support standing."); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996) ("The more drastic the injury that government action makes more likely, the lesser the increment in probability necessary to establish standing."). *See also* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.4 (3d ed.) ("Present concrete injury shades into the risk of future injury, or the denial of an opportunity . . . Injury itself has become a term of the standing art, no more definite than many other terms of art.").

catastrophic consequences to Chaitram and other beneficiaries, who depend on the Pension Fund for retirement.

Furthermore, the mere allegation of this serious risk is sufficient to survive Defendants' motion to dismiss. At the pleading stage, "the plaintiff need not present more specific scientific evidence or statistical verification to prove that the risk actually exists." *Baur*, 352 F.3d at 642 (quoting *Bennett v. Spear*, 520 U.S. 154 (1997)) (internal quotation marks omitted). *See also Alliant Energy Corp. v. Bie*, 277 F.3d 916, 920 (7th Cir. 2002) ("It is easy to imagine facts consistent with [the] complaint and affidavits that will show plaintiffs' standing . . . no more is required.").

Chaitram thus has Article III standing to bring all four claims in this case. Because Defendants do not raise any other grounds for dismissal of Claim III, their motion to dismiss is denied with respect to that claim. The Court now turns to the remaining claims.

## II. Claim II is Predicated on a Statute Which Does Not Apply to This Dispute

Defendants' move to dismiss Claim II on the ground that the statute Plaintiffs cite does not apply to this dispute. (Defs.' Mem. at 2-3). According to the Amended Complaint, ERISA § 4301 entitles employers and employees who "are adversely affected by the act or omission of a party with respect to a multiemployer pension plan . . . to bring an action for legal or equitable relief." (Am. Compl. ¶ 52). But a more careful reading of the statute reveals Claim II is without merit.

The Amended Complaint refers only to a selected excerpt from the statute and omits important qualifying language. ERISA § 4301(a)(1), 29 U.S.C. § 1451(a)(1), provides in its entirety that:

> [a] plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party *under this subtitle* with respect to a multiemployer plan, or an employee organization which represents such a plan

8

participant or beneficiary for purposes of collective bargaining, may bring an action
for appropriate legal or equitable relief, or both.

29 U.S.C. § 1451(a)(1) (emphasis added). The emphasized language above makes clear that § 4301(a)(1) applies only to ERISA Subtitle E, which was enacted into law as the Multiemployer Pension Plan Amendments Act ("MPPAA"). *See Bay Area Laundry & Dry Cleaning Pension Tr. Fund*, 522 U.S. 192, 203 (1997) ("[ERISA § 4301(a)(1)] "answers only a 'standing' question—*who* may sue for a violation of the obligations established by the [MPPAA's] substantive provisions"). The MPPAA provides rules and enforcement mechanisms governing matters only in the following areas: employer withdrawals from ERISA plans, the merger or transfer of ERISA plan assets or liabilities, insolvent ERISA plans, payment and repayment of financial assistance to insolvent ERISA plans, and the status of benefits after termination of an ERISA plan. 29 U.S.C. §§ 1381-1405, 1411-1415, 1426, 1431, 1441. None of these relate to Plaintiffs' claims that the board is improperly constituted. (Am. Compl. ¶¶ 53-54).[9]

Accordingly, Defendants' motion to dismiss is granted with respect to Claim II.

## III. ERISA Preempts Plaintiffs' State Law Claims

Defendants move to dismiss Claims I and IV, for breach of trust and breach of fiduciary duty under New York law, on the ground that they are preempted by ERISA.[10] (Am. Compl. ¶¶

---

[9] In their memorandum opposing Defendants' motion, Plaintiffs concede "the MPPAA does not expressly confer a cause of action to employers outside the withdrawal scheme," but argue that the MPPAA "*does* recognize that participants and employers may bring an appropriate action for appropriate or equitable relief." (Pls.' Opp'n at 21-22). Ignoring that crucial qualifying phrase "under this subtitle" for a second time, Plaintiffs urge this Court to recognize a new federal cause of action under the MPPAA because "the lack of a cause of action for employers presents a gap in the statutory scheme." (*Id.*). But there is no gap in the statutory scheme. The cause of action sought by Plaintiffs is simply irrelevant to the core substantive provisions of the MPPAA.

[10] Plaintiffs do not elaborate on the legal basis for either state law claim, requiring this Court to fill in the blanks. "A breach of trust is a failure by the trustee to comply with any duty that the trustee owes, as trustee, to the beneficiaries, or to further the charitable purpose, of the trust." *Restatement*

9

42-50, 65-70). These two claims arise from Defendants' alleged violation of the Trust Agreement by: (1) failing to fill an employer trustee vacancy; (2) misrepresenting to Reliant the existence of that vacancy; (3) maintaining employer trustees on the Board who do not properly represent employers; and (4) refusing Reliant's requests to have its preferred employer representative appointed to the Board. (*Id.* ¶¶ 47, 67). The Court agrees with Defendants that ERISA preempts these state law claims.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "Common-law rules developed by decisions of state courts are 'State law' under ERISA." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 367 n.1 (1999).[11] A state law claim is preempted so long as it "has a clear 'connection with' a plan in the sense that it 'mandates employee benefit structures or their administration' or 'provides alternative enforcement mechanisms.'" *Plumbing Ind. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 67 (2d Cir. 1997) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 646 (1995)) (alterations omitted).

---

*(Third) of Trusts* § 93 (2012). In the trust context, "breach of trust" is generally interchangeable with "breach of fiduciary duty" without any formal distinction between the two. *See, e.g.*, *Goldberg v. Frye*, 217 Cal. App. 3d 1258, 1263 (1990) (describing claims against the trustee and his attorney as "breach of fiduciary duty for acting imprudently in negotiating on behalf of the trust"); *Spinner v. Nutt*, 417 Mass. 549, 552 (1994) (characterizing trust beneficiaries' claim against trustees as "breach of fiduciary duties"). *See also* Daniel R. Nappier, Note, *Blurred Lines: Analyzing an Attorney's Duties to A Fiduciary-Client's Beneficiaries*, 71 Wash. & Lee L. Rev. 2609, 2657 (2014) ("This Note refers to a breach of trust as a breach of fiduciary duty because in cases where beneficiaries sue the trustee, the claim is usually styled as a breach of fiduciary duty."). In resolving Defendants' motion to dismiss, therefore, the Court sees no basis to distinguish between Claims I and IV.

[11] This is because the "term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).

Plaintiffs' claims for breach of trust and breach of fiduciary duty implicate the administration of employee benefit structures, and are therefore preempted. They hinge on whether certain trustees are properly serving on the Board, whether vacancies on the Board exist and must be filled, whether Reliant may appoint its representative to the Board, and whether certain actions taken by the Board were improper. (Am. Compl. ¶¶ 47, 67). By the express terms of the Trust Agreement, the Pension Fund is "administered" by the Board. (Tr. Agmt. Art. III §§ 1, 11-12).[12] That administrative function includes the power to, *inter alia*, create policies and rules governing the pension plan, establish conditions for the eligibility of beneficiaries, provide for payment of benefits to beneficiaries, receive and collect all contributions to the plan, invest the Pension Fund's principal and income, admit new employer contributors to the Pension Fund, and merge the Pension Fund's plan with other pension plans. (Tr. Agmt. Art. V § 3).

Despite the foregoing, Plaintiffs insist ERISA's preemption clause does not apply because "the breach of trust claim, concerning the composition of the Employer Trustees, only tangentially relates to an ERISA plan," and because their breach of fiduciary duty claim is based on the "collateral issue of the composition of the [Board of] Trustees." (Pls.' Opp'n at 12). They do not explain why the composition of an ERISA plan's board of trustees is "tangential" or "collateral" to an ERISA plan, and the Court is unwilling to accept such conclusory arguments at face value. Plaintiffs also argue, without further explanation, that "the Trust Agreement does not . . . implicate the regulation of, *administration of*, or benefits provided under ERISA plans." (*Id.* at 11 (emphasis

---

[12] Plaintiffs do not dispute this, noting that the "Trust Agreement requires the [Pension] Fund to be *administered* by the Board" and that this "equal representation requirement tracks Section 302(c)(5) [of the LMRA], which provides that employees and employers must be equally represented in the *administration* of the [Pension] Fund." (Pls.' Opp'n at 4 (emphasis added)).

11

added)). On the contrary, for the reasons noted above, Plaintiffs' state law claims go to the heart of the plan's administration.

ERISA also preempts state law claims where they arise from "the particular rights and obligations established by a benefit plan," *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60 (2d Cir. 2010), and where "interpretation of the terms of respondents' benefit plans forms an essential part of their [state law] claim, and [state law] liability would exist . . . only because of . . . administration of ERISA-regulated benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 213 (2004). That is the case here. The proper interpretation of the Trust Agreement is an essential part of these state law claims. Their resolution depends on the meaning of certain rights and obligations established in the Trust Agreement, such as what it means for an employer trustee to "represent" an employer, and whether employers have any say in the appointment of employer trustees to the Board.

Finally, "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992), *abrogated on other grounds*, *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003). Plaintiffs' theory of recovery under state law is the same one asserted in Claim III. Claim III invokes ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which bestows a federal cause of action on beneficiaries, participants or fiduciaries to enforce the terms of the ERISA plan, and to redress any violation of ERISA's fiduciary requirements.[13] In other words, Claim III alleges that the trustees breached their fiduciary obligations under the Trust

---

[13] These fiduciary requirements are found in ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), which provides that "a [benefit plan] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan . . . ."

Agreement and federal law.[14] The state law claims are therefore an "alternative theory of recovery for conduct actionable under ERISA," *Diduck*, 974 F.2d at 288, and thus preempted. They are dismissed.

## CONCLUSION

Accordingly, Defendants' motion to dismiss is **DENIED** with respect to Claim III, because Chaitram has Article III standing and Defendants have not opposed that claim on any other grounds, **GRANTED** with respect to Claim II, because the cited statute is inapplicable to the instant case, and **GRANTED** with respect to Claims I and IV, because those state law claims are preempted by ERISA.

SO ORDERED.

Dated:    Brooklyn, New York
          November 14, 2019

/s/
I. Leo Glasser                                                    U.S.D.J.

---

[14] Specifically, Plaintiffs seek to enjoin alleged violations of the Trust Agreement that mirror LMRA § 302(c)(5): the requirement that "employees and employers [be] equally represented in the administration of [the] fund." As the Supreme Court has made clear, state law actions to enjoin such violations would have been appropriate in 1947 when the LMRA was enacted, but they have since been supplanted by ERISA. *See Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 586-88 (1993).